UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 15-52525 |
|  | ) |  |
| WRIGHT NEWMAN DUNCAN, JR., | ) | Chapter 11 |
|  | ) |  |
|  | ) | Judge Austin E. Carter |
| Debtor | ) |  |

|  |  |  |
|---|---|---|
| RREF II PB-GA, LLC, | ) |  |
|  | ) |  |
| Movant | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | CONTESTED MATTER |
| WRIGHT NEWMAN DUNCAN, JR., | ) |  |
| Debtor, | ) |  |
|  | ) |  |
| Respondent | ) |  |
|  | ) |  |

**RREF II PB-GA, LLC'S MOTION FOR RELIEF
FROM STAY OR, ALTERNATIVELY, FOR ADEQUATE PROTECTION**

Secured creditor, RREF II PB-GA, LLC ("RREF"), by undersigned counsel and pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2), files this Motion for Relief from Stay or, Alternatively, for Adequate Protection. In support of its motion, RREF states as follows:

1.      On November 2, 2015, (the "Petition Date"), Wright Newman Duncan, Jr. (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

2.      This Court has jurisdiction over the subject matter herein and the parties hereto pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 362 and the District Court's Order of Reference, along with other related statutes and rules.

3.      This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A) and (G) and is a contested matter pursuant to Fed. R. Bankr. P. 4001 and 9014.

4.      Venue of this matter is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**Promissory Note**

5.      On June 28, 2012, the Debtor executed and delivered to RREF's predecessor in interest, The Bank of Perry, a Promissory Note and Security Agreement in the original principal amount of $142,308.18.  The Debtor agreed to pay the loan by making 32 monthly payments of $1,092.16 beginning on July 20, 2012, followed by a single balloon payment of the entire unpaid balance of principal and interest due on March 20, 2015.

6.      On February 6, 2015, The Bank of Perry executed and delivered to RREF II PB Acquisitions, LLC an Endorsement to Promissory Note, which assigned and transferred all rights in the $142,308.18 Note from The Bank of Perry to RREF II PB Acquisitions, LLC.  A copy of the endorsement to RREF II PB Acquisitions, LLC is attached as part of Exhibit A.

7.      On August 7, 2015, RREF II PB Acquisitions, LLC executed and delivered to RREF an Allonge endorsing the Promissory Note, which assigned and transferred all rights in the $142,308.18 Note from RREF II PB Acquisitions, LLC to RREF.  A copy of the Promissory Note and Security Agreement along with the endorsements to RREF is attached as **Composite Exhibit A**.

**Deeds to Secure Debt for 106 S. Camelia and 30 Duncan Street Properties:**

8.      As security for the money loaned by The Bank of Perry to the Debtor, the Debtor pledged two previously executed Deeds to Secure Debt.  First, a senior Deed to Secure Debt for the real property known as 106 S. Camelia, an office building and legally described as:

All that certain lot, tract, or parcel of land, situate, lying, and being in the State of Georgia, County of Peach, and in the City of Fort Valley therein, fronting East on South Camellia Boulevard, formerly Macon Street, a distance of 25' 8" (twenty-five feet, eight inches), and running back with uniform width a distance of 92' 10" (ninety-two feet, ten inches), more or less. Said tract is bounded now or formerly on the North by lands of J. W. Woolfolk, on the East by South Camellia Boulevard, formerly Macon Street, on the South by lands of Herbert, and on the West by an open court, and said tract is the same property conveyed from Mrs. Ora Haun Watson to Linton Beckham, by deed dated March 11, 1947, of record in the Office of the Clerk of the Superior Court of Peach County, Georgia, in Deed Book W at page 69.

("106 S. Camelia").  The 106 S. Camelia Security Deed was recorded in the Peach County,

Georgia records office on March 4, 2003, in Book 270 at Page 34-37.

Second, a junior Deed to Secure Debt for the real property known as 30 Duncan Street,

the Debtor's principal residence and legally described as:

All that tract or parcel of land situate, lying and being in the State of Georgia, County of Peach, and in Land Lot 233 of the Ninth Land District therein, being known and identified as Lots 9 and 10 in Block C of Allen Subdivision and being more particularly described as follows:  BEGIN at the point of intersection between the westerly boundary of Willow Lake Road (formerly Slappey Mill Road) and the northeasterly boundary of Duncan Street in said Allen Subdivision; run thence in a northerly direction along the easterly boundary of Willow Lake Road 170 feet; run thence in a northwesterly direction parallel to Duncan Street 95 feet; run thence in a southwesterly direction on a line perpendicular to Duncan Street 150 feet to northeasterly boundary of Duncan Street; run thence in a southeasterly direction along northeasterly boundary of Duncan Street 170 feet to the point or place of beginning.

A drawing of Allen Subdivision recorded in Plat Record 3, p. 175, Clerk's Office, Superior Court, Peach County, Georgia is hereby referred to for a more complete description.

("30 Duncan Street").  The 30 Duncan Street Security Deed was recorded in the Peach County,

Georgia records office on May 7, 2010, in Book 440 at Page 634-637.

9.     On February 6, 2015, The Bank of Perry executed and delivered to RREF II PB

Acquisitions, LLC a Transfer and Assignment of Deed to Secure Debt, which transferred, assigned, sold, and conveyed all right, title and interest in the 106 S. Camelia Deed to Secure Debt, from The Bank of Perry to RREF II PB Acquisitions, LLC, and was recorded in the Peach County, Georgia records office on March 18, 2015, in Book 525 at Page 354-356.

10.     As of August 7, 2015,  RREF II PB Acquisitions, LLC executed and delivered to RREF a Transfer and Assignment of Deed to Secure Debt, which transferred, assigned, sold, and conveyed all right, title and interest in the 106 S. Camelia Deed to Secure Debt, from RREF II PB Acquisitions, LLC to RREF, and was recorded in the Peach County, Georgia records office on August 25, 2015, in Book 533 at Page 265-267.  The 106 S. Camelia Deed to Secure Debt and assignment documents to RREF are attached as **Composite Exhibit B**.

11.     On February 6, 2015, The Bank of Perry executed and delivered to RREF II PB Acquisitions, LLC a Transfer and Assignment of Deed to Secure Debt, which transferred, assigned, sold, and conveyed all right, title and interest in the 30 Duncan Street Deed to Secure Debt, from The Bank of Perry to RREF II PB Acquisitions, LLC, and was recorded in the Peach County, Georgia records office on March 18, 2015, in Book 525 at Pages 357-359.

12.     As of August 7, 2015,  RREF II PB Acquisitions, LLC executed and delivered to RREF a Transfer and Assignment of Deed to Secure Debt, which transferred, assigned, sold, and conveyed all right, title and interest in the 30 Duncan Street Deed to Secure Debt, from RREF II PB Acquisitions, LLC to RREF, and was recorded in the Peach County, Georgia records office on September 11, 2015, in Book 534 at Page 69-71.  The 30 Duncan Street Deed to Secure Debt and assignment documents to RREF are attached as **Composite Exhibit C**.

**Default, Indebtedness, Demand and Foreclosure:**

13.     The Debtor defaulted under the Promissory Note and Security Agreement by

failing to pay the full amount of the loan upon the March 20, 2015 maturity date. As of the November 2, 2015 petition date, $153,187.68 remains due, owing and unpaid. *See* Affidavit in Support of Motion for Relief from Stay that is attached as **Exhibit D**.

14.    A copy of an appraisal valuing the 106 S. Camelia property as of May 18, 2015 at $30,000.00 is attached as **Exhibit E**.[1]

15.    A copy of an appraisal valuing the 30 Duncan Street property as of May 12, 2015 at $85,000.00 is attached as **Exhibit F**.[2]  Branch Banking and Trust Company holds a first place security interest in the 30 Duncan Street property, which was filed in the amount of $19,378.60 as Claim 1-1.

16.    Before the Debtor's bankruptcy filing, on September 9, 2015, counsel for RREF sent the Debtor a demand letter based upon his failure to pay the note in full upon the March 20, 2015 maturity date. A copy of the demand letter is attached as **Exhibit G**.

17.    And, both the 106 S. Camelia and 30 Duncan Street properties were noticed for foreclosure sales on November 3, 2015. A copy of the October 1, 2015 correspondence to the Debtor containing the notices of sale for November 3, 2015 is attached as **Exhibit H**.

18.    On the eve of the foreclosure sales, the Debtor filed his bankruptcy petition.

## **RELIEF REQUESTED**

### **A.  Stay relief should be granted pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2)**

RREF requests that the Court enter an order granting relief from the automatic stay so that it may pursue its *in rem* rights and remedies against the 106 S. Camelia and 30 Duncan Street properties.

---

[1] Due to the size of the appraisal, only a summary statement is attached. A full copy is available upon request.

[2] Due to the size of the appraisal, only a summary statement is attached. A full copy is available upon request.

**362(d)(1):**

A debtor's lack of good faith in filing a bankruptcy petition constitutes "cause" for relief from stay pursuant to section 362(d)(1) of the Bankruptcy Code. *See Phoenix Piccadilly* at 1394. For the reasons mentioned above, cause exists to grant RREF relief from stay based upon the Debtor's bad faith filing.

Here, the Debtor's filing of a Chapter 11 petition on the eve of foreclosure sales based upon a debt that matured on March 20, 2015, evidences a bad faith filing. Filing a bankruptcy petition simply to forestall and delay a state court action, with no intention to effectuate a legitimate reorganization, constitutes an abuse of the Bankruptcy Code. *See In re Indian Rocks Landscaping of Indian Rocks Beach, Inc.*, 77 B.R. 909 (Bankr. M.D. Fla. 1987).

Moreover, the Debtor's election to file for Chapter 11 instead of Chapter 13 relief is a further indication of bad faith in this instance. Although the Debtor appears to easily qualify for a Chapter 13 case, he nevertheless elected to file a Chapter 11 petition. Unlike in Chapter 13, an individual Chapter 11 debtor is not required to start making plan payments towards secured creditors within the first month of filing the petition. In Chapter 11, the Debtor can initially continue to occupy the premises without making any payments towards the debt owed to RREF.

Because the Debtor's obligation to RREF has matured, the only treatment permissible in a Chapter 13 case would be to pay off the balloon over the life of the plan under 11 U.S.C. § 1322(c). Those payments must be in equal monthly installments pursuant to 11 U.S.C. § 1325(a)(5). *See In re Kelly*, 238 B.R. 808, 810 (Bankr. M.D. Fla. 2002) ("a debtor in a chapter 13 may deal with a fully matured mortgage provided the mortgage is fully paid off and satisfied before the last payment on the mortgage under the confirmed Chapter 13 plan is due."); *see also In re Lobue*, 189 B.R. 216 (Bankr. S.D. Fla. 1995). Here, RREF does not believe the Debtor has

sufficient income to pay anything close to the full debt within a reasonable period of time.

Indeed, prepetition, the Debtor did not even have sufficient income to maintain the properties, as

evidenced by RREF's forced placement of $3,116.80 in property taxes on April 10, 2015. *See*

*Levy Affidavit* at Exhibit D.

Bankruptcy courts have also found "cause" to grant stay relief when it is clear that the

debtor's income is insufficient to make loan payments. *See In re Carco P'ship*, 113 B.R. 735,

739 (Bankr. M.D. Fla. 1990) (relief from stay granted where debtor could only make monthly

interest payments at contract rate but not at default rate). Here, because the Debtor's income is

insufficient to pay off the loan balance within a reasonable time, cause exists to grant relief from

stay.

**362(d)(2):**

Bankruptcy Code section 362(d)(2) provides this Court with authority to grant relief from

the automatic stay where (a) "the debtor does not have any equity in the property" and (b) "such

property is not necessary to an effective reorganization." 11 U.S.C. §  362(d)(2).

As evidenced by the Affidavit of Jonathan Levy in Support of Motion for Relief from

Stay, attached hereto as **Exhibit D,** the Debtor has been in default of its obligations under the

applicable loan documents since March 25, 2015. Even without considering BB&T's first place

security interest in the amount of $19,378.60 as of the petition date, RREF's $153,187.68 claim

far exceeds the combined $115,000.00 value of the 106 S. Camelia and 30 Duncan Street

properties based upon the appraisals attached to this motion. Accordingly, the debtor does not

have any equity in the property and the first prong of the test is met.

RREF believes that the Debtor will be unable to meet its burden of establishing that there

is a reasonable possibility of a successful reorganization within a reasonable time. In *United*

*Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375, the Supreme Court described the second prong of Section 362(d)(2) as follows:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral is "necessary to an effective reorganization." What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property would be needed for it; but the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time.

*Timbers, supra*, 484 U.S. at 375 (internal citations omitted). As the Court stated in *Scott v. Williams (In re Williams),* 302 B.R. 923 (Bankr. M.D. Ga. 2003) (Laney, J.), the party opposing a motion for relief from the automatic stay bears the burden of persuasion on all issues except as to equity. *Williams,* 302 B.R. at 926; *see also* 11 U.S.C. § 362(g) (1993 & Supp. 2003). Here, the Debtor's income is insufficient to pay off RREF's undersecured obligation that matured prepetition within a reasonable period of time. Accordingly, reorganization is not in prospect and RREF is entitled to relief from stay.

**C.  In the unlikely event that this Court declines to dismiss this case or afford stay relief, an order for adequate protection is necessary.**

In the unlikely event that this Court declines to dismiss this bankruptcy proceeding or, alternatively, afford RREF stay relief, RREF requests that this Court enter an Order, pursuant to 11 U.S.C. §§ 361 and 362, conditioning the continued effectiveness of the stay upon the Debtor making adequate protection payments in an amount sufficient to protect and preserve RREF's position, including, without limitation, provide interest payments on the amounts due and owing RREF.

**WHEREFORE**, RREF II PB-GA, LLC respectfully requests that this Court enter an Order:  (i) granting RREF relief from stay to pursue its *in rem* rights and remedies against the 106 S. Camelia and 30 Duncan Street properties including but not limited to, the right to exercise its private power of non-judicial foreclosure sale pursuant to the appropriate state statutes and, after that, the right to proceed with filing any dispossessory proceedings to gain physical possession of the real property in the appropriate Court and, in accordance with the applicable state law, the right to proceed with any action necessary for the purpose of terminating any and all rights of the Debtor and/or the right to proceed with the filing of a confirmation action as contemplated pursuant to O.C.G.A. § 44-14-161, et seq., if applicable; or in the alternative (ii) requiring that the Debtor make adequate protection payments; (iii) waiving the fourteen day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3); and (iv) granting such other and further relief as the Court deems just and proper.

Dated:  November 16, 2015

Respectfully Submitted,

**JONES WALKER LLP**
*Attorneys for RREF II PB-GA, LLC*
One Midtown Plaza
1360 Peachtree St, NE, Suite 1030
Atlanta, GA 30309
Email:  *sdrobny@joneswalker.com*
Telephone:  404.870.7500
Facsimile:  404.870.7501

By:   */s/ Stephen P. Drobny*
        Stephen P. Drobny
        Georgia Bar No. 430447

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the undersigned has on this date electronically filed the foregoing "Motion to Dismiss Bankruptcy Case as Bad Faith Filing" using the Court's CM/ECF system, which caused an electronic copy of the motion to be served on the Debtor's counsel, United States Trustee and all other parties receiving electronic notice.

I further certify that on this date a copy of the Motion to Dismiss was also served upon the Debtor and all parties appearing on the Creditor Mailing Matrix, a copy of which is attached hereto, by First Class United States Mail.

Dated November 16, 2015

By:   */s/ Stephen P. Drobny*
        Stephen P. Drobny

Label Matrix for local noticing
113G-5
Case 15-52525
Middle District of Georgia
Macon
Mon Nov 16 14:31:56 EST 2015

Katz, Flatau & Boyer, LLP
355 Cotton Avenue
Macon, GA 31201-2636

5
433 Cherry Street
P.O. Box 1957
Macon, GA 31202-1957

(p)BB AND T
PO BOX 1847
WILSON NC 27894-1847

BP
PO Box 70887
Charlotte, NC 28272-0887

Bell South
c/o I C Systems Collections
PO Box 64378
Saint Paul, MN 55164-0378

CACH, LLC
c/o Scherr & McClure, PA
1064 Greenwood Blvd, Ste 328
Lake Mary, FL 32746-5419

Capital One
PO Box 30281
Salt Lake City, UT 84130-0281

Family Dental Group
c/o Credit Bureau Associates
420 College Street
Macon, GA 31201-6707

Michael W. Early, MD
c/o Advance Bureau of Collections
135 Lamar Street
Macon, GA 31204-3007

Office of U.S. Trustee
c/o Elizabeth A. Hardy
Assistant U.S. Trustee
440 MLK Jr. Blvd Ste 302
Macon, GA 31201-7987

Office of U.S. Trustee
c/o Robert G. Fenimore
Trial Attorney
440 MLK Jr. Blvd Ste 302
Macon, GA 31201-7987

Peach County Tax Commissioner
PO Box 931
Fort Valley, GA 31030-0931

RREF II PB-GA, LLC
c/o Stephen P. Drobny, Esq.
Jones Walker LLP
One Midtown Plaza
1360 Peachtree St., Suite 1030
Atlanta, GA 30309-3284

U.S. Trustee - MAC
440 Martin Luther King Jr. Boulevard
Suite 302
Macon, GA 31201-7987

Valley Insurance
302 Vineville Street
Fort Valley, GA 31030-4155

Verizon Wireless
c/o Pinnacle Credit Services
PO Box 640
Hopkins, MN 55343-0640

Wesley J. Boyer
Katz, Flatau, Popson and Boyer, LLP
355 Cotton Avenue
Macon, GA 31201-2636

Wright Newman Duncan Jr.
30 Duncan Street
Fort Valley, GA 31030-4593

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

BB&T
Attn:  General Recovery
PO Box 1489
Lumberton, NC 28359-1489

(d)BB&T
PO Box 1847
Wilson, NC 27894

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

# COMPOSITE EXHIBIT A

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NO. DATE | INITIALS |
|---|---|---|---|---|
| | WRIGHT N DUNCAN JR | | 06/28/12 | 4022 |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $142,308.18 | Not Applicable | 6.000% | 03/20/15 | Commercial |
| | | Creditor Use Only | | |

# PROMISSORY NOTE AND SECURITY AGREEMENT
### (Commercial - Single Advance)

**DATE AND PARTIES.** The date of this Promissory Note and Security Agreement (Loan Agreement) is June 28, 2012. The parties and their addresses are:

**LENDER:**
THE BANK OF PERRY
1006 Main Street
PERRY, GA 31069
Telephone: (478) 987-2554

**BORROWER:**
WRIGHT N DUNCAN JR
30 DUNCAN ST
FORT VALLEY, GA 31030-4593

**1. DEFINITIONS.** As used in this Loan Agreement, the terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Loan Agreement, individually and together. "You" and "Your" refer to the Lender.

**B. Loan Agreement.** Loan Agreement refers to this combined Note and Security Agreement, and any extensions, renewals, modifications and substitutions of this Loan Agreement.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Loan Agreement.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**G. Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of **$142,308.18 (Principal)** plus interest from June 28, 2012 on the unpaid Principal balance until this Loan Agreement matures or this obligation is accelerated.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Loan Agreement at the rate of **6.000 percent (Interest Rate).**

**A. Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Loan Agreement at 16.000 percent until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Loan Agreement will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Accrual.** Interest accrues using an Actual/360 days counting method.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

**A. Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Loan Agreement before the scheduled maturity date.
    **Loan Origination.** A(n) Loan Origination fee of $250.00 payable from the loan proceeds.
    **VSI.** A(n) VSI fee of $15.00 payable from the loan proceeds.
    **Flood Certification.** A(n) Flood Certification fee of $24.00 payable from the loan proceeds.
    **Credit Report.** A(n) Credit Report fee of $3.50 payable from the loan proceeds.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Loan Agreement.

**A. Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

**6. GOVERNING AGREEMENT.** This Loan Agreement is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Loan Agreement, including the terms and conditions under which the maturity of this Loan Agreement may be accelerated. When I sign this Loan Agreement, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PAYMENT.** I agree to pay this Loan Agreement in **33** payments. This Loan Agreement is amortized over **216** payments. I will make 32 payments of **$1,092.16** beginning on July 20, 2012, and on the 20th day of each month thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due March 20, 2015.

WRIGHT N DUNCAN JR
Georgia **Promissory Note and Security Agreement**
GA/4MICHELLE00000000000625052070912N      Wolters Kluwer Financial Services ©1996, 2012 Bankers Systems™      Page 1



Payments will be rounded to the nearest $.01. With the final payment also to agree with the principal fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Loan Agreement will be applied first to interest that is due, then to principal that is due, then to escrow that is due, and finally to late charges that are due. If you and I agree to a different application of payments, we will describe our agreement on this Loan Agreement. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is CONSOLIDATING LOAN # 33660 & 33662.

**10. SECURITY.** The Loan is secured by Property described in the SECURITY AGREEMENT section, and by separate security instruments prepared together with this Loan Agreement as follows:

| Document Name | Parties to Document | Date of Security Document |
|---|---|---|
| Deed To Secure Debt (GA) - 106 S. CAMELLIA | WRIGHT N DUNCAN JR | 03/03/2003 |
| Deed To Secure Debt (GA) - 30 DUNCAN ST | WRIGHT N DUNCAN JR | 05/06/2010 |

and by the following, previously executed, security instruments or agreements: DEED TO SECURE DEBT DATED MARCH 3, 2003 COVERING ALL THAT CERTAIN LOT, TRACT, OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE STATE OF GEORGIA, COUNTY OF PEACH, AND IN THE CITY OF FORT VALLEY THEREIN, FRONTING EAST ON SOUTH CAMELLIA BOULEVARD, FORMERLY MACON STREET, A DISTANCE OF 25' 8" (TWENTY-FIVE FEET,EIGHT INCHES), AND RUNNING BACK WITH UNIFORM WIDTH A DISTANCE OF 92' 10",(NINETY-TWO FEET, TEN INCHES), MORE OR LESS.

PROPERTY IS LOCATED @ 106 S. CAMELLIA FORT VALLEY, GEORGIA 31030

DEED TO SECURE DEBT DATED MAY 6, 2010 COVERING ALL THAT TRACT OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE STATE OF GEORGIA, COUNTY OF PEACH, AND IN LAND LOT 233 OF THE NINTH LAND DISTRICT THEREIN, BEING KNOWN AND IDENTIFIED AS LOTS 9 AND 10 IN BLOCK C OF ALLEN SUBDIVISION.

PROPERTY IS LOCATED @ 30 DUNCAN STREET, FORT VALLEY, GEORGIA 31030.

**11. SECURITY AGREEMENT.**

**A. Secured Debts.** This Security Agreement will secure the following debts (Secured Debts), together with all extensions, renewals, refinancings, modifications and replacements of these debts:

(1) Sums Advanced under the terms of this Loan Agreement. All sums advanced and expenses incurred by you under the terms of this Loan Agreement.

(2) All Debts. All present and future debts of all Borrowers owing to you, even if this Security Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Agreement. Nothing in this Security Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Security Agreement will not secure any debt for which you fail to give any required notice of the right of rescission. This Security Agreement will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices.

**B. Security Interest.** To secure the payment and performance of the Secured Debts, I give you a security interest in all of the Property described in this Security Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Security Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Security Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**C. Property Description.** The Property subject to this Security Agreement is described as follows:

(1) Specific Property. UCC-1# 76-2010-00377 FILED 02/24/2010 COVERING ALL EQUIPMENT, MACHINERY, FURNITURE, FIXTURES & INVENTORY OF THE DEBTOR OF EVERY DESCRIPTION.

**D. Duties Toward Property.**

(1) Protection of Secured Party's Interest. I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

(2) Use, Location, and Protection of the Property. I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my name or address.

Until the Secured Debts are fully paid and this Security Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

(3) Selling, Leasing or Encumbering the Property. I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Security Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court

WRIGHT N DUNCAN JR
Georgia Promissory Note and Security Agreement
GA/4MICHELLE0000000000062505207091 2N

Wolters Kluwer Financial Services ©1996, 2012 Bankers Systems™      Page 2



0 0 0 0 0 0 0 0 0 0 0 0 0 3 3 6 6 0 1 1 3 3 4 0 6 2 8 2 0 1 2

order affecting my rights to the Property, any accounts, contracts or other rights to payment, or if the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**E. Authority To Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement or any other security interest, you are authorized, without notice to me, to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

(1) pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

(2) pay any rents or other charges under any lease affecting the Property.

(3) order and pay for the repair, maintenance and preservation of the Property.

(4) file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

(5) place a note on any chattel paper indicating your interest in the Property.

(6) take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

(7) handle any suits or other proceedings involving the Property in my name.

(8) prepare, file, and sign my name to any necessary reports or accountings.

(9) make an entry on my books and records showing the existence of this Agreement.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**F. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. My principal residence is located in Georgia. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**G. Perfection of Security Interest.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all actual costs of terminating your security interest.

**12. DUE ON SALE.** You may, at your option, declare the entire balance of this Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Loan Agreement, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Loan Agreement.

(1) You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Loan Agreement.

(4) You, or any institution participating in this Loan Agreement, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Loan Agreement to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Loan Agreement as a Borrower is authorized to modify the terms of this Loan Agreement or any instrument securing, guarantying or relating to this Loan Agreement.

(7) I waive my right to notice prior to seizure of my personal property when you are seeking to foreclose a secured interest in any of my personal property used to secure this Loan.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Loan Agreement, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**C. Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**14. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**15. APPLICABLE LAW.** This Loan Agreement is governed by the laws of Georgia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**16. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Loan Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Loan Agreement may not be amended or modified by oral agreement. No amendment or modification of this Loan Agreement is effective unless made in writing and executed by you and me. This Loan Agreement and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with

WRIGHT N DUNCAN JR
Georgia **Promissory Note and Security Agreement**
GA/4MICHELLE0000000000625052070912N      Wolters Kluwer Financial Services ©1996, 2012 Bankers Systems™      Page 3



respect to this loan, you fail to fulfill any necessary requirements or conditions of sections 5.101 through 35 of Regulation Z or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**18. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Loan Agreement.

**19. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**20. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**21. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**22. SIGNATURES.** By signing under seal, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement.

BORROWER:

_Wright N Duncan Jr._ _____ Date 6-28-2012 (Seal)
WRIGHT N DUNCAN JR
Individually

LENDER:

THE BANK OF PERRY

By _Shelia G Laws_ _____ Date 6/28/12 _____ (Seal)
SHELIA G LAWS, CONSUMER LOAN OFFICER

---

WRIGHT N DUNCAN JR
Georgia Promissory Note and Security Agreement
GA/4MICHELLE00000000000625052070912N                 Wolters Kluwer Financial Services ©1996, 2012 Bankers Systems™          Page 4



## ENDORSEMENT TO PROMISSORY NOTE

This Endorsement applies to that certain Promissory Note and Security Agreement dated as of June 28, 2012, in the face amount of $142,308.18 (the "Note"), which is held by The Bank of Perry ("Seller").

Seller absolutely assigns, transfers, endorses, negotiates and sets over to and makes payable to the order of RREF II PB Acquisitions, LLC ("Buyer"), the Note and all interest, principal and other sums due or to become due under the Note, and all other rights of any nature accrued or to accrue under the Note, without recourse and without representation or warranty of any kind except as expressly set forth in that certain Loan Purchase Agreement dated as of February 6, 2015, by and between the undersigned and Buyer.

Dated as of February 6, 2015.

**THE BANK OF PERRY**

By _____

Its _____

9649

6405655.1

W. Duncan, Jr.

Quantum Loan Number: ████9649
Borrower Name: Wright N. Duncan Jr.
AMO No: ███2.052

## ALLONGE

ALLONGE to that certain Promissory Note and Security Agreement dated as of June 28, 2012 in the original principal amount of $142,308.18, executed by WRIGHT N DUNCAN JR, payable to the order of THE BANK OF PERRY.

Pay to the order of RREF II PB-GA, LLC, a Georgia limited liability company.

Dated as of August 7, 2015.

**RREF II PB ACQUISITIONS, LLC,**
**a Delaware limited liability company**

By: Rialto Capital Advisors, LLC,
a Delaware limited liability company,
its attorney-in-fact

By: _____
Name: Lori Buekler
Title:    Authorized Signatory

# COMPOSITE EXHIBIT B

GEORGIA-Peach County
Clerk's Office Superior Court
Filed this ___4th___ day of __March___ __2003__
At 11:09 o'clock __A.___ M. Recorded in __Deed__
Book __270__ Page No. 34 — This __4th__
day of March, 2003, 37
_____
Deputy

Return to: Adams & Adams, LLP
Attorneys at Law
P.O. Box 1376
Fort Valley, GA 31030
F37-103

## SECURITY DEED

## GEORGIA, PEACH COUNTY

IN CONSIDERATION OF Twenty-nine Thousand Nine Hundred Twelve and 36/100 ($29,912.36) DOLLARS, to him paid, receipt of which is hereby acknowledged, **WRIGHT N. DUNCAN, JR.**, hereinafter referred to as Grantor, has this day bargained and sold and does hereby transfer and convey unto **THE BANK OF PERRY**, Post Office Box 830, Perry, Georgia 31069, a banking corporation organized and existing under the laws of the State of Georgia, of the County of Houston, its successors and assigns, hereinafter referred to as Grantee, the following described property, to-wit:

> All that certain lot, tract, or parcel of land, situate, lying, and being in the State of Georgia, County of Peach, and in the City of Fort Valley therein, fronting East on South Camellia Boulevard, formerly Macon Street, a distance of 25' 8" (twenty-five feet, eight inches), and running back with uniform width a distance of 92' 10" (ninety-two feet, ten inches), more or less. Said tract is bounded now or formerly on the North by lands of J. W. Woolfolk, on the East by South Camellia Boulevard, formerly Macon Street, on the South by lands of Herbert, and on the West by an open court, and said tract is the same property conveyed from Mrs. Ora Haun Watson to Linton Beckham, by deed dated March 11, 1947, of record in the Office of the Clerk of the Superior Court of Peach County, Georgia, in Deed Book W at page 69.

This conveyance includes all buildings, structures and improvements now or hereafter situated on the hereinabove described land and all air conditioning units, heating, plumbing (both hot and cold water and expressly covering heaters and tanks) and lighting fixtures, radio and television aerials and antennae equipment and appliances of all kinds, now or hereafter attached to or used in connection with improvements on said land, and also includes all rents from said property whether now or hereafter existing.

Grantee, the successors and assigns of Grantee, to have and to hold said property and its appurtenances forever in Fee Simple.

Grantor covenants that he is lawfully seized and possessed of said described property, and has a good title thereto, and right to convey same and that same is unencumbered except as hereinbefore expressly set forth.

Grantor warrants the title to said described property unto Grantee and unto the successors and assigns of Grantee, against the lawful claims of all persons whomsoever.

This conveyance is intended to operate as provided in Title 44, Chapter 14, Article 3 of the Official Code of Georgia Annotated, and Acts of the General Assembly amendatory thereto, in regard to the sale of property to secure debts, and to pass the title to the property described unto Grantee, the debt hereby secured being a promissory note, of even date, executed by the Grantor herein and payable to the Grantee herein, being described as follows:

One promissory note dated March 3, 2003 in the amount of $29,912.36 principal plus interest at a rate of 8.50%, due and payable in 35 monthly installments beginning April 15, 2003 and continuing on the same day of each month thereafter until paid in full. The final maturity of the above set forth note is February 15, 2006, together with all extensions and renewals thereof in whole or part, whether evidenced by new note, extension agreement or otherwise, and together also with the other obligations herein described or referred to.

This instrument shall further secure any and all amounts which by contract Grantor is now or hereafter becomes indebted to Grantee, whether individually or jointly with others not parties hereto, and whether direct or indirect, as maker, endorser, guarantor, surety or otherwise; and if there is more than one Grantor hereunder, this instrument secures any indebtedness which any one or more of such Grantors now or hereafter owe Grantee.

If the maker of the note described above is not the Grantor, this instrument shall also further secure any and all amounts which by contract said maker is now or hereafter becomes indebted to Grantee, whether individually or jointly with others not parties hereto, and whether direct or indirect, as maker, endorser, guarantor, surety or otherwise; and if there is more than one maker of said note, this instrument secures any indebtedness which any one or more of said makers now or hereafter, by contract, owe Grantee.

The debt hereby secured shall become due and payable, at the option of the Grantee, upon the occurrence of any one or more of the following events without the prior written consent of Grantee, its successors or assigns: (1) the sale or conveyance of any part of the property hereby conveyed or any interest therein, (2) the execution of a contract for the sale of any part of the property or any interest therein accompanied by or followed by delivery of possession of the property to the purchaser or a nominee of the purchaser, (3) the grant of a leasehold interest for a period of more than three years, or of a leasehold interest which is renewable at the option of the lessee for a period extending more than three years from the date of the grant, (4) the grant of a leasehold interest for any period of time by document which also grants an option to purchase, or (5) the grant of an option to purchase any part of the property hereby conveyed for a period in excess of six months or renewable at the option of the optionee for a period extending more than six months beyond the date of the option.

Should this deed be inferior to the lien of any other security instrument or instruments, or should it hereafter be subordinated to the lien of any other security instrument or instruments, any default by Grantor in the payment of the indebtedness secured by such other instrument or instruments or any default by Grantor in any of the terms and conditions of such other instrument or instruments, shall give the Grantee herein, its successors and assigns, the right to declare immediately due and payable the entire indebtedness hereby secured.

And Grantee shall be subrogated to all rights and liens of any person whose charge or lien shall be paid off out of proceeds of the indebtedness above described.

Grantor agrees to keep said personal property and all improvements now or hereafter erected on said land in good condition and repair and not to commit or permit waste; to promptly pay as same become due all taxes and assessments that may be liens on property covered hereby and to furnish Grantee, if demanded, evidence of such payment; and to keep all said property and improvements fully insured against fire and storm, and against war risk if demanded, for the benefit of Grantee in such manner, amounts and companies as may be satisfactory to Grantee, and promptly deliver policies of such insurance and renewals thereof, to Grantee, with evidence of payment of premiums.

In the event Grantor, his personal representatives or assigns, shall fail to pay any taxes or assessments that may be liens upon said property, or shall fail to deliver to Grantor policies on insurance and renewals thereof with evidence of payment of premiums thereon, or shall fail to make timely payments on all sums secured by any prior conveyance to secure debt, or shall allow default to occur under the terms and conditions thereof with evidence of payment of premiums thereon, or shall fail to make timely payments on all sums secured by any prior conveyance to secure debt, or shall allow default to occur under the terms and conditions of such prior conveyance to secure debt, then Grantee or the holder of this deed may pay such unpaid taxes and assessments, or may have such insurance written and pay the premiums thereof, or may make the payments on the sums secured by the prior conveyance to secure debt, or may advance the necessary sum to cure any default under the terms and conditions of such prior conveyance to secure debt; and all amounts so paid, with interest on said amounts at the same rate as provided in the then most recently executed note secured by this instrument (but not to exceed the maximum rate allowed by applicable law), shall be secured by this deed and shall be repaid to the holder of this deed within ten (10) days after such payment, and all of this irrespective of whether

or not a sale of the property has been made by Grantor or a junior lien created by or against Grantor thereon and notice of such sale or lien given to Grantee.

And should the Grantee receive any money for damages covered by insurance, such money may be retained and applied toward the payment of any amount hereby secured or may be paid over, either wholly or in part, to the said Grantor to enable Grantor to repair or replace improvements, or for any other purpose without affecting the lien of this deed for the full amount secured hereby before such damage or such payments ever took place.

Should any tax be imposed on this instrument or on the indebtedness secured hereby, or should any amount secured hereby or interest thereon, or any insurance premiums, taxes or assessments not be paid when due, or upon the actual or threatened demolition or removal of any property conveyed by this deed or any improvements now or hereafter erected on premises covered hereby, or in case of default in the due observance of any covenant herein by Grantor, all amounts secured hereby shall, at the option of Grantee, at once become due and payable, time being of the essence of the contract.

Whenever the debt secured hereby or any part hereof shall be in default either according to the tenor of any note or by virtue of any condition herein, Grantee, or the agent of Grantee, may enter upon and take possession of said property, and collect the rents and profits thereof and apply the same to the payment of any indebtedness secured hereby.

And furthermore, in case of default, and whether or not possession be taken, Grantee, or the agent of Grantee, or the Sheriff of the County in which said property or any part thereof is located may, and is hereby authorized to sell before the Courthouse door in the County in which such property or any part thereof is located, to the highest bidder for cash, all or any part of such property, in one or more sales (the power of sale herein contained not to be exhausted until all of such property has been sold), after advertising the time, place and terms of sale in any newspaper published in said County once a week for four weeks; with the right in Grantee, successors or assigns of Grantee, to become the purchaser at such sale; the proceeds of said sale to be applied, first to the payment of all amounts secured hereby with interest, all unpaid assessments and taxes, and expenses of sale, and any remainder to be paid to Grantor, the agent or legal representative or assignee of Grantor.

Grantee, the agent, successors or assigns of such party, of the Sheriff aforesaid, is authorized to make to any purchaser of said property Fee Simple titles to the same, thereby divesting out of the Grantor all right, title and equity that said party has, or may hereafter have, in and to said property, and vesting the same in the purchaser thereof, and the purchaser may enter upon the premises and take possession of all improvements thereon and property herein conveyed and dispossess Grantor and any and all persons in possession under Grantor, said Grantor agreeing that possession will be surrendered without let or hindrance of any kind.

And Grantee upon complaint filed or other legal proceeding being commenced to realize on the security afforded by this deed may apply for and shall as a matter of right and without consideration of the value of the property conveyed as security for the amounts due Grantee or of the solvency of any person or persons obligated for the payment of such amounts and without notice, be entitled to the appointment by any competent court of a receiver to take charge of and hold the property hereby conveyed and the rents, issues and profits thereof, for the benefit of Grantee.

Wherever the word "Grantor" is used herein the same shall be construed to include, when appropriate, either gender and both singular and plural, as shall also the pronouns used herein, which are applicable thereto, and the grammatical construction of sentences shall conform thereto.

Any transferee hereof, its agent or legal representative, shall have all the rights, powers, privileges and options hereby vested in Grantee; and any successor to Grantor in title to the property hereby conveyed shall be charged with the performance of all covenants made by Grantor herein, and shall be responsible for all duties and obligations herein imposed on Grantor.

By execution hereof by the Grantor herein and acceptance hereof by the Grantee herein, the parties hereto hereby affirmatively state that they intend to create and establish a perpetual or indefinite security interest in favor of Grantee in said property, pursuant to O.C.G.A., §44-14-80 (a) (1) or §44-14-80 (a) (2), as applicable, and agree that title to said property conveyed hereby shall not revert to Grantor until the expiration of the longest period of time permitted under whichever of said subsections as shall be applicable to this conveyance, or, if later, the date determined in accordance with O.C.G.A., §44-14-80 (b) or §44-14-80 (c), as applicable, if any portion or all of the Specific Debt is extended or renewed.

But the foregoing powers for realizing on this security are cumulative only of the remedies to which Grantee and the successors and assigns of Grantee may be entitled under the laws of Georgia.

WITNESS THE HAND AND SEAL OF GRANTOR, this 3rd day of March, 2003.

Signed, sealed and delivered
in the presence of:

_____
Witness

_____ (L.S.)
WRIGHT N. DUNCAN, JR.

_____
Notary Public

GEORGIA-Peach County

Clerk's Office Superior Court

Filed this ___18th___ day of ___March,___ 2015

At __10:20__ o'clock __A.__ M. Recorded in Deed

Book __525__ Page No.354-356 This 18th

day of ___March,___ 2015

_____ Clerk
Deputy

Recorded March 18, 2015

BOOK 5 2 5 PAGE 3 5 4

[SPACE ABOVE RESERVED FOR RECORDER'S OFFICE]

**RETURN TO:**
Anderson McCoy, & Orta, PC
100 N. Broadway, Suite 2600
Oklahoma City, OK 73102
**AMO File No.** ███2.052AM1

## TRANSFER AND ASSIGNMENT OF DEED TO SECURE DEBT

(Re: Security Deed recorded in Deed Book 270,
Page 34, Peach County, Georgia Records)

For value received, The Bank of Perry (hereinafter called "*Assignor*") hereby transfers, assigns, sells, and conveys unto RREF II PB Acquisitions, LLC (hereinafter called "*Assignee*") with a mailing address of 790 NW 107th Avenue, Suite 400, Miami, FL 33172, its successors and assigns, all of Assignor's right, title, and interest in, to, and under that certain Security Deed from Wright N. Duncan, Jr. (hereinafter called "*Borrower*"), to the Bank of Perry dated March 3, 2003, recorded in Deed Book 270, Page 34, Peach County, Georgia Records (together with any amendments or modifications thereof), the indebtedness secured thereby, the property described in Exhibit A , and all its rights, privileges and powers under the terms thereof.

The foregoing assignment is made WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, express or implied, except as set forth in, but subject to the limitations of, that certain Loan Purchase Agreement between Assignor and Assignee, dated February *6* , 2015.

███████ 9649

6405659.1

W. Duncan, Jr.

BOOK  525 PAGE  355

IN WITNESS WHEREOF, the undersigned has hereunto caused this instrument to be signed and sealed this 6th day of February, 2015.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires:

_____

Exact Date of Execution by Notary Public:

2-4-15
_____

[AFFIX NOTARIAL SEAL]

THE BANK OF PERRY

By: _____

Name: Michael M. Allen, SVP

[SEAL]

BOOK  525 PAGE  356

## EXHIBIT A

All that certain lot, tract, or parcel of land, situate, lying, and being in the State of Georgia, County of Peach, and in the City of Fort Valley therein, fronting East on South Camellia Boulevard, formerly Macon Street, a distance of 25' 8" (twenty-five feet, eight inches), and running back with uniform width a distance of 92' 10" (ninety-two feet, ten inches), more or less.  Said tract is bounded now or formerly on the North by lands of J. W. Woolfolk, on the East by South Camellia Boulevard, formerly Macon Street, on the South by lands of Herbert, and on the West by an open court, and said tract is the same property conveyed from Mrs. Ora Haun Watson to Linton Beckham, by deed dated March 11, 1947, of record in the Office of the Clerk of the Superior Court of Peach County, Georgia, in Deed Book W at page 69.

**LESS AND EXCEPT ANY AND ALL PROPERTY PREVIOUSLY RELEASED OF RECORD.**

**GEORGIA-Peach County**
Clerk's Office Superior Court
Filed this __25th_ day of _August,_____ 2015_
At _10:15_ o'clock__A._M. Recorded in _Deed
Book_ 533 _Page No._265-267_This _25th_
day of_ _August,_  _2015_ _____ Clerk

Deputy

Recorded August 25, 2015

BOOK 5 3 3 PAGE 2 6 5

## ASSIGNMENT OF SECURITY DEED

RREF II PB ACQUISITIONS, LLC, a Delaware limited liability company
(Assignor)

to

RREF II PB-GA, LLC, a Georgia limited liability company
(Assignee)

Effective as of August 7, 2015

County of Peach
State of Georgia

DOCUMENT PREPARED BY:
Anderson, McCoy & Orta, P.C.
100 North Broadway, Suite 2600
Oklahoma City, Oklahoma 73102
Telephone: 888-236-0007

WHEN RECORDED, RETURN TO:
Tony Shaw
Jones Walker
201 South Biscayne Boulevard, Suite 2600
Miami, FL 33131
305-679-5725

Cross-reference to: Deed Book 270, Page 34; Deed Book 525, Page 354

Quantum Loan Number: ██████9649
Borrower Name: Wright N. Duncan Jr.
AMO No: ██2.052

BOOK 533 PAGE 266

## ASSIGNMENT OF SECURITY DEED

As of the 7th day of August, 2015, **RREF II PB ACQUISITIONS, LLC, a Delaware limited liability company**, having an address at 790 NW 107th Avenue, Suite 400, Miami, FL 33172, ("Assignor"), as the holder of the instrument hereinafter described and for valuable consideration hereby endorses, assigns, sells, transfers and delivers to **RREF II PB-GA, LLC, a Georgia limited liability company**, having an address at 790 NW 107th Avenue, Suite 400, Miami, FL 33172, ("Assignee"), its successors, participants and assigns, without recourse or warranty, all right, title and interest of Assignor in and to that certain:

SECURITY DEED made by WRIGHT N. DUNCAN, JR. to THE BANK OF PERRY dated as of March 3, 2003 and recorded on March 4, 2003, in Deed Book 270, Page 34 in the Recorder's Office of Peach County, Georgia ("Recorder's Office") (as the same has heretofore been amended, modified, restated, supplemented, renewed or extended) ("Security Deed").

The Security Deed was assigned to Assignor, by assignment instrument(s) dated as of February 6, 2015 and recorded on March 18, 2015, in Deed Book 525, Page 354, in the Recorder's Office.

Together with any and all notes and obligations therein described, the debt and claims secured thereby and all sums of money due and to become due thereon, with interest provided for therein, and hereby irrevocably appoints Assignee hereunder its attorney to collect and receive such debt, and to foreclose, enforce and satisfy the foregoing the same as it might or could have done were these presents not executed, but at the cost and expense of Assignee.

Together with any and all other liens, privileges, security interests, rights, entitlements, equities, claims and demands as to which Assignor hereunder possesses or to which Assignor is otherwise entitled as additional security for the payment of the notes and other obligations described herein.

This Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

BOOK 533 PAGE 267

IN WITNESS WHEREOF, RREF II PB ACQUISITIONS, LLC, has caused this instrument to be executed as of the date first above written.

ASSIGNOR:

Signed, sealed and delivered
in the presence of:

**RREF II PB ACQUISITIONS, LLC,
a Delaware limited liability company**

By:  Rialto Capital Advisors, LLC,
     a Delaware limited liability company,
     its attorney-in-fact

Tania Lumbreras

By: _____
Name: Lori Buckler
Title:  Authorized Signatory

Galaxia Marquez

## ACKNOWLEDGMENT

STATE OF FLORIDA                    )
                                    )    SS:
COUNTY OF MIAMI-DADE                )

On this 7th day of August, 2015, before me personally appeared, Lori Buckler, as Authorized Signatory, of Rialto Capital Advisors, LLC, a Delaware limited liability company, as Attorney-in-Fact for RREF II PB ACQUISITIONS, LLC, a Delaware limited liability company, who is personally known to me or proved to me on the basis of satisfactory evidence to be the person who executed the foregoing instrument, and she thereupon duly acknowledged to me that she executed the same to be her free act and deed.

WITNESS my hand and official seal.

Maria Gonzalez-Rodriguez, Notary Public
My commission expires:



MARIA GONZALEZ-RODRIGUEZ
Commission # EE 125025
Expires August 24, 2015
Bonded Thru Troy Fain Insurance 800-385-7019

# COMPOSITE EXHIBIT C

GEORGIA-Peach County
Clerk's Office Superior Court
Filed this __7th__ day of __May,__   2010
At __4:40__ o'clock __P.__ M. Recorded in __Deed__
Book __440__ Page No. 634-637 This __7th__
day of __May,__   2010

_____ Clerk
_____ Deputy

Return to: Adams & Adams, LLP
Attorneys at Law
P.O. Box 1376
Fort Valley, GA 31030
(F1F-101)

BOOK  440 PAGE  634

# SECURITY DEED

## GEORGIA, PEACH COUNTY

IN CONSIDERATION OF One Hundred Thirty-one Thousand Nine Hundred Ninety-seven and 36/100 ($131,997.36) Dollars, to him paid, receipt of which is hereby acknowledged, **WRIGHT N. DUNCAN, JR.**, hereinafter referred to as Grantor, has this day bargained and sold and does hereby transfer and convey unto **THE BANK OF PERRY**, P.O. Box 830, Perry, GA 31069, a banking corporation organized and existing under the laws of the State of Georgia, its successors and assigns, hereinafter referred to as Grantee, the following described property, to-wit:

All that tract or parcel of land situate, lying and being in the State of Georgia, County of Peach, and in Land Lot 233 of the Ninth Land District therein, being known and identified as Lots 9 and 10 in Block C of Allen Subdivision and being more particularly described as follows:  BEGIN at the point of intersection between the westerly boundary of Willow Lake Road (formerly Slappey Mill Road) and the northeasterly boundary of Duncan Street in said Allen Subdivision; run thence in a northerly direction along the easterly boundary of Willow Lake Road 170 feet; run thence in a northwesterly direction parallel to Duncan Street 95 feet; run thence in a southwesterly direction on a line perpendicular to Duncan Street 150 feet to northeasterly boundary of Duncan Street; run thence in a southeasterly direction along northeasterly boundary of Duncan Street 170 feet to the point or place of beginning.

A drawing of Allen Subdivision recorded in Plat Record 3, p. 175, Clerk's Office, Superior Court, Peach County, Georgia is hereby referred to for a more complete description.

This conveyance includes all buildings, structures and improvements now or hereafter situated on the hereinabove described land and all air conditioning units, heating, plumbing (both hot and cold water and expressly covering heaters and tanks) and lighting fixtures, radio and television aerials and antennae equipment and appliances of all kinds, now or hereafter attached to or used in connection with improvements on said land, and also includes all rents from said property whether now or hereafter existing.

Grantee, the successors and assigns of Grantee, to have and to hold said property and its appurtenances forever in Fee Simple.

Grantor covenants that he is lawfully seized and possessed of said described property, and has a good title thereto, and right to convey same and that same is unencumbered except as hereinbefore expressly set forth.

Grantor warrants the title to said described property unto Grantee and unto the successors and assigns of Grantee, against the lawful claims of all persons whomsoever.

This conveyance is intended to operate as provided in Title 44, Chapter 14, Article 3 of the Official Code of Georgia Annotated, and Acts of the General Assembly amendatory thereto, in regard to the sale of property to secure debts, and to pass the title to the property described unto Grantee, the debt hereby secured being a promissory note, of even date, executed by the Grantor herein and payable to the Grantee herein, being described as follows:

BOOK  4 4 0 PAGE  6 3 5

One promissory note dated May 6, 2010 in the amount of $131,997.36 principal plus interest at a rate of 6.0%, due and payable in 34 monthly installments beginning June 19, 2010, and continuing on the same day of each month thereafter until paid in full. The final maturity of the above set forth note is March 19, 2013, together with all extensions and renewals thereof in whole or part, whether evidenced by new note, extension agreement or otherwise, and together also with the other obligations herein described or referred to.

This instrument shall further secure any and all amounts which by contract Grantor is now or hereafter becomes indebted to Grantee, whether individually or jointly with others not parties hereto, and whether direct or indirect, as maker, endorser, guarantor, surety or otherwise; and if there is more than one Grantor hereunder, this instrument secures any indebtedness which any one or more of such Grantors now or hereafter owe Grantee.

If the maker of the note described above is not the Grantor, this instrument shall also further secure any and all amounts which by contract said maker is now or hereafter becomes indebted to Grantee, whether individually or jointly with others not parties hereto, and whether direct or indirect, as maker, endorser, guarantor, surety or otherwise; and if there is more than one maker of said note, this instrument secures any indebtedness which any one or more of said makers now or hereafter, by contract, owe Grantee.

The debt hereby secured shall become due and payable, at the option of the Grantee, upon the occurrence of any one or more of the following events without the prior written consent of Grantee, its successors or assigns: (1) the sale or conveyance of any part of the property hereby conveyed or any interest therein, (2) the execution of a contract for the sale of any part of the property or any interest therein accompanied by or followed by delivery of possession of the property to the purchaser or a nominee of the purchaser, (3) the grant of a leasehold interest for a period of more than three years, or of a leasehold interest which is renewable at the option of the lessee for a period extending more than three years from the date of the grant, (4) the grant of a leasehold interest for any period of time by document which also grants an option to purchase, or (5) the grant of an option to purchase any part of the property hereby conveyed for a period in excess of six months or renewable at the option of the optionee for a period extending more than six months beyond the date of the option.

Should this deed be inferior to the lien of any other security instrument or instruments, or should it hereafter be subordinated to the lien of any other security instrument or instruments, any default by Grantor in the payment of the indebtedness secured by such other instrument or instruments or any default by Grantor in any of the terms and conditions of such other instrument or instruments, shall give the Grantee herein, its successors and assigns, the right to declare immediately due and payable the entire indebtedness hereby secured.

And Grantee shall be subrogated to all rights and liens of any person whose charge or lien shall be paid off out of proceeds of the indebtedness above described.

Grantor agrees to keep said personal property and all improvements now or hereafter erected on said land in good condition and repair and not to commit or permit waste; to promptly pay as same become due all taxes and assessments that may be liens on property covered hereby and to furnish Grantee, if demanded, evidence of such payment; and to keep all said property and improvements fully insured against fire and storm, and against war risk if demanded, for the benefit of Grantee in such manner, amounts and companies as may be satisfactory to Grantee, and promptly deliver policies of such insurance and renewals thereof, to Grantee, with evidence of payment of premiums.

In the event Grantor, his personal representatives or assigns, shall fail to pay any taxes or assessments that may be liens upon said property, or shall fail to deliver to Grantor policies on insurance and renewals thereof with evidence of payment of premiums thereon, or shall fail to make timely payments on all sums secured by any prior conveyance to secure debt, or shall allow default to occur under the terms and conditions thereof with evidence of payment of premiums thereon, or shall fail to make timely payments on all sums secured by any prior conveyance to secure debt, or shall allow default to occur under the terms and conditions of such prior conveyance to secure debt, then Grantee or the holder of this deed may pay such unpaid taxes and assessments, or may have such insurance written and pay the premiums thereof, or may make the

BOOK 440 PAGE 636

payments on the sums secured by the prior conveyance to secure debt, or may advance the necessary sum to cure any default under the terms and conditions of such prior conveyance to secure debt; and all amounts so paid, with interest on said amounts at the same rate as provided in the then most recently executed note secured by this instrument (but not to exceed the maximum rate allowed by applicable law), shall be secured by this deed and shall be repaid to the holder of this deed within ten (10) days after such payment, and all of this irrespective of whether or not a sale of the property has been made by Grantor or a junior lien created by or against Grantor thereon and notice of such sale or lien given to Grantee.

And should the Grantee receive any money for damages covered by insurance, such money may be retained and applied toward the payment of any amount hereby secured or may be paid over, either wholly or in part, to the said Grantor to enable Grantor to repair or replace improvements, or for any other purpose without affecting the lien of this deed for the full amount secured hereby before such damage or such payments ever took place.

Should any tax be imposed on this instrument or on the indebtedness secured hereby, or should any amount secured hereby or interest thereon, or any insurance premiums, taxes or assessments not be paid when due, or upon the actual or threatened demolition or removal of any property conveyed by this deed or any improvements now or hereafter erected on premises covered hereby, or in case of default in the due observance of any covenant herein by Grantor, all amounts secured hereby shall, at the option of Grantee, at once become due and payable, time being of the essence of the contract.

Whenever the debt secured hereby or any part hereof shall be in default either according to the tenor of any note or by virtue of any condition herein, Grantee, or the agent of Grantee, may enter upon and take possession of said property, and collect the rents and profits thereof and apply the same to the payment of any indebtedness secured hereby.

And furthermore, in case of default, and whether or not possession be taken, Grantee, or the agent of Grantee, or the Sheriff of the County in which said property or any part thereof is located may, and is hereby authorized to sell before the Courthouse door in the County in which such property or any part thereof is located, to the highest bidder for cash, all or any part of such property, in one or more sales (the power of sale herein contained not to be exhausted until all of such property has been sold), after advertising the time, place and terms of sale in any newspaper published in said County once a week for four weeks; with the right in Grantee, successors or assigns of Grantee, to become the purchaser at such sale; the proceeds of said sale to be applied, first to the payment of all amounts secured hereby with interest, all unpaid assessments and taxes, and expenses of sale, and any remainder to be paid to Grantor, the agent or legal representative or assignee of Grantor.

Grantee, the agent, successors or assigns of such party, of the Sheriff aforesaid, is authorized to make to any purchaser of said property Fee Simple titles to the same, thereby divesting out of the Grantor all right, title and equity that said party has, or may hereafter have, in and to said property, and vesting the same in the purchaser thereof, and the purchaser may enter upon the premises and take possession of all improvements thereon and property herein conveyed and dispossess Grantor and any and all persons in possession under Grantor, said Grantor agreeing that possession will be surrendered without let or hindrance of any kind.

And Grantee upon complaint filed or other legal proceeding being commenced to realize on the security afforded by this deed may apply for and shall as a matter of right and without consideration of the value of the property conveyed as security for the amounts due Grantee or of the solvency of any person or persons obligated for the payment of such amounts and without notice, be entitled to the appointment by any competent court of a receiver to take charge of and hold the property hereby conveyed and the rents, issues and profits thereof, for the benefit of Grantee.

Wherever the word "Grantor" is used herein the same shall be construed to include, when appropriate, either gender and both singular and plural, as shall also the pronouns used herein, which are applicable thereto, and the grammatical construction of sentences shall conform thereto.

BOOK 4 4 0 PAGE 6 3 7

Any transferee hereof, its agent or legal representative, shall have all the rights, powers, privileges and options hereby vested in Grantee; and any successor to Grantor in title to the property hereby conveyed shall be charged with the performance of all covenants made by Grantor herein, and shall be responsible for all duties and obligations herein imposed on Grantor.

By execution hereof by the Grantor herein and acceptance hereof by the Grantee herein, the parties hereto hereby affirmatively state that they intend to create and establish a perpetual or indefinite security interest in favor of Grantee in said property, pursuant to O.C.G.A., §44-14-80 (a) (1) or §44-14-80 (a) (2), as applicable, and agree that title to said property conveyed hereby shall not revert to Grantor until the expiration of the longest period of time permitted under whichever of said subsections as shall be applicable to this conveyance, or, if later, the date determined in accordance with O.C.G.A., §44-14-80 (b) or §44-14-80 (c), as applicable, if any portion or all of the Specific Debt is extended or renewed.

But the foregoing powers for realizing on this security are cumulative only of the remedies to which Grantee and the successors and assigns of Grantee may be entitled under the laws of Georgia.

WITNESS THE HAND AND SEAL OF GRANTOR, this 6th day of May, 2010.

Signed, sealed and delivered
in the presence of:

WRIGHT N. DUNCAN, JR.

Witness  WALTER E. JONES

Notary Public

SHELIA G. LAWS
Notary Public
STATE OF GEORGIA
My Comm. Exp. 4-01-2011

SEAL

GEORGIA-Peach County

Clerk's Office Superior Court

Filed this 18th day of March, 2015

At 10:20 o'clock A. M. Recorded in Deed

Book 525 Page No.357-359 This 18th

day of March, 2015

Clerk
Deputy

Recorded March 18, 2015

BOOK 525 PAGE 357

[SPACE ABOVE RESERVED FOR RECORDER'S OFFICE]

**RETURN TO:**
Anderson McCoy, & Orta, PC
100 N. Broadway, Suite 2600
Oklahoma City, OK 73102
AMO File No. ████ 2.052

## TRANSFER AND ASSIGNMENT OF DEED TO SECURE DEBT

(Re: Security Deed recorded in Deed Book 440,
Page 634, Peach County, Georgia Records)

For value received, The Bank of Perry (hereinafter called "*Assignor*") hereby transfers, assigns, sells, and conveys unto RREF II PB Acquisitions, LLC (hereinafter called "*Assignee*") with a mailing address of 790 NW 107th Avenue, Suite 400, Miami, FL 33172, its successors and assigns, all of Assignor's right, title, and interest in, to, and under that certain Security Deed from Wright N. Duncan, Jr. (hereinafter called "*Borrower*"), to the Bank of Perry dated May 6, 2010, recorded in Deed Book 440, Page 634, Peach County, Georgia Records (together with any amendments or modifications thereof), the indebtedness secured thereby, the property described in Exhibit A  , and all its rights, privileges and powers under the terms thereof.

The foregoing assignment is made WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, express or implied, except as set forth in, but subject to the limitations of, that certain Loan Purchase Agreement between Assignor and Assignee, dated February 6, 2015.

████████████ 9649

6405661.1

W. Duncan, Jr. (2)

BOOK 525 PAGE 358

    IN WITNESS WHEREOF, the undersigned has hereunto caused this instrument to be signed and sealed this _6th_ day of February, 2015.

Signed, sealed and delivered in the presence of:

_Annie D. Sol_
Unofficial Witness

_Pamela J. Barton_
Notary Public

My Commission Expires:

_____

Exact Date of Execution by Notary Public:

_2-4-15_

[AFFIX NOTARIAL SEAL]

THE BANK OF PERRY

By: _____

Name: _Michael A. Huson, EVP_

[SEAL]

W. Duncan, Jr. (2)

BOOK  525 PAGE  359

## EXHIBIT A

All that tract or parcel of land situate, lying and being in the State of Georgia, County of Peach, and in Land Lot 233 of the Ninth Land District therein, being known and identified as Lots 9 and 10 in Block C of Allen Subdivision and being more particularly described as follows:  BEGIN at the point of intersection between the westerly boundary of Willow Lake Road (formerly Slappey Mill Road) and the northeasterly boundary of Duncan Street in said Allen Subdivision; run thence in a northerly direction along the easterly boundary of Willow Lake Road 170 feet; run thence in a northwesterly direction parallel to Duncan Street 95 feet; run thence in a southwesterly direction on a line perpendicular to Duncan Street 150 feet to northeasterly boundary of Duncan Street; run thence in a southeasterly direction along northeasterly boundary of Duncan Street 170 feet to the point or place of beginning.

A drawing of Allen Subdivision recorded in Plat Record 3, p. 175, Clerk's Office, Superior Court, Peach County, Georgia is hereby referred to for a more complete description.

**LESS AND EXCEPT ANY AND ALL PROPERTY PREVIOUSLY RELEASED OF RECORD.**

BOOK 5 5 4 PAGE

Recorded September 11, 2015

GEORGIA-Peach County

Clerk's Office Superior Court

Filed this __11th__ day of __September__ __2015__
At __10:00__ o'clock __A__ M. Recorded in __Deed__
Book __534__ Page No.__69-71__ This __11th__
day of __September__ __2015__

_____ Clerk

# ASSIGNMENT OF SECURITY DEED

**RREF II PB ACQUISITIONS, LLC**, a Delaware limited liability company
(Assignor)

to

**RREF II PB-GA, LLC**, a Georgia limited liability company
(Assignee)

Effective as of August 7, 2015

County of Peach
State of Georgia

DOCUMENT PREPARED BY:
Anderson, McCoy & Orta, P.C.
100 North Broadway, Suite 2600
Oklahoma City, Oklahoma 73102
Telephone: 888-236-0007

WHEN RECORDED, RETURN TO:
Tony Shaw
Jones Walker
201 South Biscayne Boulevard, Suite 2600
Miami, FL 33131
305-679-5725

Cross-reference to: Deed Book 440, Page 634; Deed Book 525, Page 357

BOOK **5 3 4** PAGE **0 7 0**

Quantum Loan Number: ████████9649
Borrower Name: Wright N. Duncan Jr.
AMO No: ████2.052

## ASSIGNMENT OF SECURITY DEED

As of the 7th day of August, 2015, **RREF II PB ACQUISITIONS, LLC, a Delaware limited liability company**, having an address at 790 NW 107th Avenue, Suite 400, Miami, FL 33172, ("Assignor"), as the holder of the instrument hereinafter described and for valuable consideration hereby endorses, assigns, sells, transfers and delivers to **RREF II PB-GA, LLC, a Georgia limited liability company**, having an address at 790 NW 107th Avenue, Suite 400, Miami, FL 33172, ("Assignee"), its successors, participants and assigns, without recourse or warranty, all right, title and interest of Assignor in and to that certain:

SECURITY DEED made by WRIGHT N. DUNCAN, JR. to THE BANK OF PERRY dated as of May 6, 2010 and recorded on May 7, 2010, in Deed Book 440, Page 634 in the Recorder's Office of Peach County, Georgia ("Recorder's Office") (as the same has heretofore been amended, modified, restated, supplemented, renewed or extended) ("Security Deed").

The Security Deed was assigned to Assignor, by assignment instrument(s) dated as of February 6, 2015 and recorded on March 18, 2015, in Deed Book 525, Page 357, in the Recorder's Office.

Together with any and all notes and obligations therein described, the debt and claims secured thereby and all sums of money due and to become due thereon, with interest provided for therein, and hereby irrevocably appoints Assignee hereunder its attorney to collect and receive such debt, and to foreclose, enforce and satisfy the foregoing the same as it might or could have done were these presents not executed, but at the cost and expense of Assignee.

Together with any and all other liens, privileges, security interests, rights, entitlements, equities, claims and demands as to which Assignor hereunder possesses or to which Assignor is otherwise entitled as additional security for the payment of the notes and other obligations described herein.

This Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

BOOK **5 3 4** PAGE **0 7 1**

IN WITNESS WHEREOF, RREF II PB ACQUISITIONS, LLC, has caused this instrument to be executed as of the date first above written.

ASSIGNOR:

Signed, sealed and delivered
in the presence of:

**RREF II PB ACQUISITIONS, LLC,**
**a Delaware limited liability company**

By:  Rialto Capital Advisors, LLC,
     a Delaware limited liability company,
     its attorney-in-fact

Tania Lumbreras

By: _____
Name: Lori Buckler
Title:  Authorized Signatory

Galaxia Marquez

ACKNOWLEDGMENT

STATE OF FLORIDA          )
                          )  SS:
COUNTY OF MIAMI-DADE      )

On this 7th day of August, 2015, before me personally appeared, Lori Buckler, as Authorized Signatory, of Rialto Capital Advisors, LLC, a Delaware limited liability company, as Attorney-in-Fact for RREF II PB ACQUISITIONS, LLC, a Delaware limited liability company, who is personally known to me or proved to me on the basis of satisfactory evidence to be the person who executed the foregoing instrument, and she thereupon duly acknowledged to me that she executed the same to be her free act and deed.

WITNESS my hand and official seal.

Maria Gonzalez-Rodriguez, Notary Public
My commission expires:



MARIA GONZALEZ-RODRIGUEZ
Commission # EE 125025
Expires August 24, 2015
Bonded Thru Troy Fain Insurance 800-385-7019

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| In re: ) | Case No. 15-52525 |
| ) | |
| WRIGHT NEWMAN DUNCAN, JR., ) | Chapter 11 |
| ) | |
| Debtor ) | Judge Austin E. Carter |
| ) | |
| RREF II PB-GA, LLC, ) | |
| ) | |
| Movant ) | |
| ) | |
| v. ) | CONTESTED MATTER |
| ) | |
| WRIGHT NEWMAN DUNCAN, JR., Debtor, ) | |
| ) | |
| Respondent ) | |
| ) | |
| ) | |

**AFFIDAVIT IN SUPPORT OF
MOTION FOR RELIEF FROM STAY**

Before me, the undersigned authority, personally appeared Jonathan Levy, who, being duly sworn, deposed and said:

1.      I am over the age of 21 years and competent to give this affidavit.

2.      I am an authorized signatory and director of Rialto Capital Advisors, LLC ("Rialto"), the attorney-in-fact for RREF II PB Acquisitions, LLC, sole member of RREF II PB-GA, LLC ("RREF") I am authorized to testify in support of RREF's Motion for Relief from Stay.

3.      I make this Affidavit in my capacity as a director and authorized signatory for Rialto. All facts recited herein are within my personal knowledge of all records concerning the account with Debtor and are true and correct.

{M1069318.1}

4.      I am familiar with the account of Wright Newman Duncan, Jr. (hereinafter the "Debtor"). I have reviewed the books, records and loan documents as maintained in RREF's regular course of business. These books, records and loan documents are managed by me or employees under me, whose duty it is to keep the books, records and loan documents accurately and completely and to record events or items at or near the time of the event or item so noted.

5.      I have reviewed the books, records, and loan documents which show that RREF is the owner and holder of a June 28, 2012 Promissory Note and Security Agreement executed by the Debtor in favor of The Bank of Perry in the original principal amount of $142,308.18. True and correct copies of the Promissory Note and Security Agreement along with the endorsements to RREF are attached to the underlying Motion for Relief from Stay as **Composite Exhibit A**.

6.      RREF is also the owner and holder of a Deed to Secure Debt recorded in the Peach County, Georgia records office on March 4, 2003, in Book 270 at Page 34-37, for the property being more particularly described in RREF's Motion for Relief from Stay on file (the "106 S. Camelia"). True and correct copies of the Deed to Secure Debt for 106 S. Camelia along with the assignments to RREF are attached to the underlying Motion for Relief from Stay as **Composite Exhibit B**.

7.      RREF is also the owner and holder of a Deed to Secure Debt recorded in the Peach County, Georgia records office on May 7, 2010, in Book 440 at Page 634-637, for the property being more particularly described in RREF's Motion for Relief from Stay on file ("30 Duncan Street "). True and correct copies of the Deed to Secure Debt for 30 Duncan Street along with the assignments to RREF are attached to the underlying Motion for Relief from Stay as **Composite Exhibit C**.

8.    The Debtor is in default on the obligation to RREF in that Debtor has failed to pay the balance of the loan upon the March 20, 2015 maturity date, pursuant to the terms of the above described loan documents.

9.    As of the November 2, 2015 petition date, Debtor owes RREF the following amounts:

| | | | |
|---|---|---|---|
| i. | Principal Balance: | $ | 132,809.40 |
| ii. | Interest: | $ | 12,323.13 |
| iii. | Recording Fees: | $ | 20.00 |
| iv. | 4/10/2015 Escrow Advance for Property Taxes: | $ | 3,116.80 |
| v. | Foreclosure Costs and Attorneys' Fees: | $ | 4,918.35 |
| vi. | Total Payoff Amount: | $ | 153,187.68 |

10.    Movant has had to retain counsel to represent it before the Court and is incurring legal expenses and attorneys' fees for which it is entitled to reimbursement under the Note and/or Mortgage.

I declare that the foregoing facts are true and correct.

Executed on this __13__ day of November, 2015.

By: RREF II PB-GA, LLC

By: RREF II PB Acquisitions, LLC
its sole member

By: Rialto Capital Advisors, LLC,
its attorney in fact

By: _____
Name: JONATHAN LEVY
Title: Authorized Signatory

{M1069318.1}

SUBSCRIBED AND SWORN TO before me on this the ___13___ day of November, 2015.

NOTARY PUBLIC

My Commission Expires: 

**Ninette Minguez**
COMMISSION # FF158743
EXPIRES: Sept. 10, 2018
WWW.AARONNOTARY.COM

# EXHIBIT E

APPRAISAL REPORT

For

RIALTO CAPITAL, QUANTUM SERVICING CORP.,
AND THEIR ATTORNEYS

On

FILE NO. 19761293
WRIGHT N. DUNCAN, JR.
RETAIL BUILDING
106 SOUTH CAMELLIA BOULEVARD
FORT VALLEY, PEACH COUNTY, GEORGIA

As Of

MAY 18, 2015

By

PIEDMONT REALTY ADVISORS, INC.

# Piedmont Realty Advisors, Inc.

## Real Estate Appraisals & Consulting

1049 Sammi Jo Lane

Dacula, Georgia  30019

(770) 367-0205

piedmont.realty.advisors@gmail.com

May 22, 2015

Quantum Servicing Corporation

6302 E. Martin Luther King Jr. Blvd, Suite 310

Tampa, FL 33619

RE: <u>File No. 19761293</u>

To Whom It May Concern:

At your request, I have provided an opinion of the "As Is" Market Value of the fee simple interest in retail building located at 106 South Camellia Boulevard, Fort Valley, Peach County, Georgia.

The subject is in fair/poor condition with the most significant items of deferred maintenance include a leaking roof needing replacement, a large crack with a one inch gap on the rear wall of the building and a non-working air-conditioning system.  No estimates of repair were provided.

The Fee Simple "As Is" Market Value of the subject property, and the Basic Assumptions and Limiting Conditions included herein, and based on market conditions as of May 18, 2015, is:

| **THIRTY THOUSAND DOLLARS** |
|:---:|
| **($30,000)** |

I have made a personal inspection of the subject property. My employment was not conditional upon producing a specific value or a value within a given range.  Future employment prospects are not dependent upon producing a specific value.  Employment and payment of the fee is not based on whether a loan application is approved or disapproved.

The analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute, the Uniform Standards of Professional Appraisal Practice (USPAP) promulgated by the Appraisal Foundation, and the requirements of Title XI of the Federal Financial Institutions Reform Act of 1989 (FIRREA).

A reasonable exposure period for the subject is estimated to be nine months.

This appraisal was ordered by MountainSeed Appraisal Management AMC #19 for a fee of $1,800.

May 22, 2015
Page Two


Attached hereto is a narrative report to substantiate my findings.  It has been a pleasure to serve you in this matter.

Sincerely,

PIEDMONT REALTY ADVISORS

Christopher A. English
Georgia General Certified Real Estate Appraiser (No. 1362; Exp. 11-30-15)
Alabama General Certified Real Estate Appraiser (No. G01101; Exp. 9-30-15)

EXHIBIT F

# Uniform Residential Appraisal Report

A550171
File # 19709115

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

SUBJECT

| | | | |
|---|---|---|---|
| Property Address 30 Duncan St | City Fort Valley | State GA | Zip Code 31030 |

Borrower Wright N Duncan Jr  Owner of Public Record Wright N Duncan Jr  County Peach

Legal Description Lot 1, Block C, Allen Subdivision

Assessor's Parcel # F01F 101  Tax Year 2014  R.E. Taxes $ 1,884

Neighborhood Name Fort Valley/Willow Lake Area  Map Reference F01F  Census Tract 0404.00

Occupant ☒ Owner ☐ Tenant ☐ Vacant  Special Assessments $ 0  ☐ PUD  HOA $ 0  ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Other

Lender/Client Quantum Servicing Corp  Address 6302 E. Martin Luther King Jr. Blvd, Suite 310, Tampa, Fl 33619

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). Central Ga. MLS

CONTRACT

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $  Date of Contract  Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

NEIGHBORHOOD

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | PRICE | AGE | One-Unit | 75 % |
| Built-Up ☐ Over 75% ☒ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | $ (000) | (yrs) | 2-4 Unit | 3 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 65 Low 2 | | Multi-Family | 3 % |
| Neighborhood Boundaries All that area known as Fort Valley, North by Hwy 96, south by Peach/Macon | | | | 250 High 120 | | Commercial | 10 % |
| County line, West by River Road and east by Hwy 341 | | | | 115 Pred. 20 | | Other | 9 % |

Neighborhood Description The subject is located in an established area of various size and style houses off State College Dr and Willow Lake Road near the intersection State College Drive, near Fort Valley State College. The location is convenient to schools, worship, shopping and employment centers. **Other land use is vacant land***

Market Conditions (including support for the above conclusions) Marketability is considered average, subject to the above indicated marketing period and current market conditions. However, this can vary due to factors (interest rates, demand/supply, etc.) that affect marketability. Mortgage financing is available at current market rates.

SITE

Dimensions See Attached Plat  Area 19,602 sf  Shape Mostly Rectangular  View N;Res;

Specific Zoning Classification R-1  Zoning Description Residential

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X  FEMA Map # 13225C0095C  FEMA Map Date 09/26/2008

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

Drainage and utility easements are typical for the area and don't adversely affect the subject's marketability or value. No adverse easements or encroachments were noted. Utilites were on at the time of the inspection and were in working order

IMPROVEMENTS

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☒ Crawl Space | | Foundation Walls | Block/Brick/Avg | Floors | Carpet/HW/CT/Avg |
| # of Stories 1 | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | Brick/Average | Walls | Sheetr/Panel/Avg |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 0 sq.ft. | | | Roof Surface | Shingles/Avg | Trim/Finish | Wood/Average |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 0 % | | | Gutters & Downspouts None | | Bath Floor | Tile/Avg |
| Design (Style) Ranch | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type D.H. Wood/Avg | | Bath Wainscot Tile/Avg | |
| Year Built 1978 | | Evidence of ☐ Infestation | | Storm Sash/Insulated Insulated/Avg | | Car Storage ☐ None | |
| Effective Age (Yrs) 15 | | ☐ Dampness ☐ Settlement | | Screens None | | ☐ Driveway # of Cars | |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities | Woodstove(s) # 0 | | Driveway Surface Paved | |
| ☒ Drop Stair ☐ Stairs | | ☐ Other Fuel Electric | | ☒ Fireplace(s) # 1 ☐ Fence None | | ☐ Garage # of Cars 0 | |
| ☐ Floor ☐ Scuttle | | Cooling ☒ Central Air Conditioning | | ☐ Patio/Deck None ☒ Porch Front | | ☐ Carport # of Cars 0 | |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool None | Other Sun Porch | ☐ Att. ☐ Det. ☐ Built-in |
| Appliances ☐ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☒ Other (describe) Hood | | | | | | | |

Finished area above grade contains: 8 Rooms  3 Bedrooms  2.0 Bath(s)  2,448 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) Typical energy efficiency for a house this age.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). C4;No updates in the prior 15 years;The subject is in average condition overall. No deficiencies were observed and no repairs are required at this time. An estimate was made of accrued physical depreciation using the Economic Age-Life Method. No functional or external depreciation was noted.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

No adverse conditions were observed; however, the appraiser is not qualified to detect the presence of hazardous waste or materials.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

Property is similar to other homes in the neighborhood.

# Uniform Residential Appraisal Report

There are __12__ comparable properties currently offered for sale in the subject neighborhood ranging in price from $ __80,000__ to $ __150,000__ .
There are __12__ comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ __80,000__ to $ __150,000__ .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 30 Duncan St | 113 Barrett Dr | | 403 Peggy Dr | | 2337 Camp John Hope Rd | |
| | Fort Valley, GA 31030 | Fort Valley, GA 31030 | | Fort Valley, GA 31030 | | Fort Valley, GA 31030 | |
| Proximity to Subject | | 0.37 miles W | | 2.49 miles NW | | 3.73 miles SE | |
| Sale Price | $ | | $ 72,500 | | $ 81,000 | | $ 86,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 31.78 sq.ft. | | $ 38.65 sq.ft. | | $ 41.11 sq.ft. | |
| Data Source(s) | | CGMLS#120020;DOM 48 | | CGAMLS#116810;DOM 251 | | CGMLS#119414;DOM 235 | |
| Verification Source(s) | | Tax Assessor Deed (520/613) | | Tax Assessor Deed (521/035) | | Tax Assessor Deed (526/084) | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | REO | | REO | | Arm;Lth | |
| Concessions | | Cash;0 | | Cash;0 | | FHA;160 | |
| Date of Sale/Time | | s10/14;c09/14 | | s11/14;c11/14 | | s03/15;c03/15 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 19,602 sf | 40,946 sf | 0 | 29,185 sf | 0 | 1.00 ac | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Ranch | DT1;Ranch | | DT1;Ranch | | DT1;Ranch | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 37 | 21 | 0 | 52 | 0 | 28 | 0 |
| Condition | C4 | C4 | | C4 | | C3 | -5,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8  3  2.0 | 8  3  2.0 | | 8  3  2.0 | | 7  3  2.0 | 0 |
| Gross Living Area | 2,448 sq.ft. | 2,281 sq.ft. | +3,340 | 2,096 sq.ft. | +7,040 | 2,092 sq.ft. | +7,120 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Cent/Cent | Cent/Cent | | Cent/Cent | | Cent/Cent | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2dw | 2ga2dw | -3,000 | 2cp2dw | -2,000 | 2dw | |
| Porch/Patio/Deck | Porch | Porch | | Porch | | Porch | |
| Fireplace | 1 Fireplace | 1 Fireplace | | 1 Fireplace | | None | +300 |
| Amenities | SunPorch | Patio | +2,000 | Patio/Fence | 0 | Deck | +2,000 |
| Net Adjustment (Total) | | ☒ + ☐ - $ 2,340 | | ☒ + ☐ - $ 5,040 | | ☒ + ☐ - $ 4,420 | |
| Adjusted Sale Price | | Net Adj.  3.2 % | | Net Adj.  6.2 % | | Net Adj.  5.1 % | |
| of Comparables | | Gross Adj.  11.5 % $ 74,840 | | Gross Adj.  11.2 % $ 86,040 | | Gross Adj.  16.8 % $ 90,420 | |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   Tax Records, Macon MLS, Central GA MLS, Middle Georgia Data Center
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   Tax Records, Macon MLS, Central GA MLS, Middle Georgia Data Center
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | 05/06/2014 | | 03/19/2014 |
| Price of Prior Sale/Transfer | | $100,504 | | $25,400 |
| Data Source(s) | Tax Records | Tax Records | Tax Records | Tax Records |
| Effective Date of Data Source(s) | 05/14/2015 | 05/14/2015 | 05/14/2015 | 05/14/2015 |

Analysis of prior sale or transfer history of the subject property and comparable sales   The appraiser has searched all relevant data sources in reporting the
sales history of the subject and comparable properties. Sale 1 transfered from Crocker to Planet Home Lending (foreclosure), Sale 3 transfered
from Hud to M G Investments (bank sale).

Summary of Sales Comparison Approach   The comparable properties analyzed here are recent closed sales located in the subject  market area.  They
are the most similar and most recent sales available.  All of the properties are considered good indicators  of value for the subject property and
were given similar weight.  The adjustments made to the sales represent the appraiser's  attempt to isolate and compensate for significantly
dissimilar features or conditions. The intended user of this appraisal  report is the Lender/Client. The intended use is  to evaluate the property that is
the subject of this appraisal for a mortgage  finance transaction subject to the stated Scope of Work, purpose of the appraisal, reporting
requirements of this appraisal  report form, and Definition of Market Value. No additional intended users are identified by the appraiser.

Indicated Value by Sales Comparison Approach $  85,000

Indicated Value by: Sales Comparison Approach $  85,000   Cost Approach (if developed) $  90,354   Income Approach (if developed) $
The Sales Comparison Analysis is given the most weight since it best reflects the actions of buyers and sellers in the market.  The Cost Approach
supports the Sales Analysis but was given less weight overall.   The Income Approach was not considered appropriate for this type of single family
residential property.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$   85,000 , as of   05/12/2015 , which is the date of inspection and the effective date of this appraisal.

# EXHIBIT G



# JONES WALKER

RSA BATTLE HOUSE TOWER
11 NORTH WATER STREET, SUITE 1200
MOBILE, ALABAMA 36602
251-432-1414
FAX 251-433-4106
www.joneswalker.com

Christopher H. Ezell
Direct Dial: 251-439-7508
cezell@joneswalker.com

September 9, 2015

## VIA U.S. AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Mr. Wright N. Duncan, Jr.
30 Duncan Street
Fort Valley, Georgia 31030

Re:     Promissory Note and Security Agreement dated as of June 28, 2012 that Wright
N. Duncan executed and delivered payable to the order of The Bank of Perry in
the original principal amount of $142,308.18; as secured by security deeds
encumbering real property in Peach County, Georgia, as modified and amended;
now currently owned and held by RREF II PB-GA, LLC

Dear Mr. Duncan:

My client RREF II PB-GA, LLC informs me that an event of default occurred under the
above-referenced note when, among other events of default, you failed to make the payment at
maturity due on March 20, 2015.

RREF II PB-GA, LLC hereby demands that it receive the balance due under the above-
referenced loan documents on or before the close of business on the tenth (10th) day after the date
of this letter.  The current unpaid principal balance owed is $132,420.00, which is due with
interest, attorneys' fees, and costs of collection.

If RREF II PB-GA, LLC does not receive the balance due before the close of business on
the tenth (10th) day after the date of this letter, RREF II PB-GA, LLC will exercise all of its
rights available under the above-referenced loan documents and pursuant to Georgia law,
including its right to foreclose on the deed to secure debt.

Unless the amount due is paid in full within ten (10) days after you receive this
correspondence, the provision for attorneys' fees in the loan documents will be enforced, as
provided by Official Code of Georgia Annotated ("O.C.G.A.") Section 13-1-11, and you will be
required to pay such stipulated attorneys' fees.  The payment for attorneys' fees will be in
addition to the obligation to pay the amounts due.  If my client receives the amount due within
ten (10) days after you receive this letter, you will not be required to pay the attorneys' fees.  In

{M0993040.1}

JONES WALKER LLP

ALABAMA ▫ ARIZONA ▫ CALIFORNIA ▫ DISTRICT OF COLUMBIA ▫ FLORIDA ▫ GEORGIA ▫ LOUISIANA ▫ MISSISSIPPI ▫ NEW YORK ▫ OHIO ▫ TEXAS

Mr. Wright N. Duncan, Jr.
September 9, 2015
Page 2

other words, you can avoid the additional obligation of attorneys' fees if the amount due is fully paid within ten (10) days from receipt of this letter.

If you dispute the validity of the debt, the amount owed, or any portion thereof, and provide written notice of the dispute to me, written verification of the debt or the disputed portion will be provided; however, if you do not notify me such dispute, I will assume that the amount stated above is correct. If you request the name and address of the original creditor in writing, I will furnish that information. Notification to me of any dispute in the amount owed will not necessarily provide a grace period. **THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED AS A RESULT OF THIS COMMUNICATION WILL BE USED FOR THAT PURPOSE.**

I trust that you will pay RREF II PB-GA, LLC the necessary amounts as set forth in this letter immediately.

Sincerely yours,

Christopher H. Ezell

# EXHIBIT H



# JONES WALKER

RSA BATTLE HOUSE TOWER
11 NORTH WATER STREET, SUITE 1200
MOBILE, ALABAMA 36602
251-432-1414
FAX 251-433-4106
www.joneswalker.com

Christopher H. Ezell
Direct Dial: 251-439-7508
cezell@joneswalker.com

October 1, 2015

**VIA CERTIFIED MAIL**

Mr. Wright N. Duncan, Jr.
30 Duncan Street
Fort Valley, Georgia 31030

Clayton D. Moseley, Esq.
1427 Roswell Road
Marietta, GA 30062

Re:   Promissory Note and Security Agreement dated as of June 28, 2012 that Wright
N. Duncan executed and delivered payable to the order of The Bank of Perry in
the original principal amount of $142,308.18; as secured by security deeds
encumbering real property in Peach County, Georgia, as modified and amended;
now currently owned and held by RREF II PB-GA, LLC

Dear Mr. Duncan and Mr. Moseley:

RREF II PB-GA, LLC, successor in interest by assignment from RREF II PB
Acquisitions, LLC, successor in interest by assignment from The Bank of Perry, has authorized
me to schedule a foreclosure sale of the property encumbered by the above-referenced deed to
secure debt.  Enclosed is a copy of the Notice of Sale being submitted to the publisher of *The
Leader Tribune*.  The sale will be conducted on November 3, 2015, at the Peach County
Courthouse between the hours of 10:00 a.m. and 4:00 p.m.

Sincerely yours,

Christopher H. Ezell

Enclosure

{M1034560.1}

JONES WALKER LLP

ALABAMA ■ ARIZONA ■ CALIFORNIA ■ DISTRICT OF COLUMBIA ■ FLORIDA ■ GEORGIA ■ LOUISIANA ■ MISSISSIPPI ■ NEW YORK ■ OHIO ■ TEXAS

STATE OF GEORGIA

PEACH COUNTY

## NOTICE OF SALE UNDER POWER

By virtue of the power of sale contained in that certain Security Deed given by Wright N. Duncan, Jr. to The Bank of Perry dated March 3, 2003, filed for record on March 4, 2003 in Book 270, Page 34, Peach County, Georgia Records; as assigned by that certain Transfer and Assignment of Security Deed by The Bank of Perry to RREF II PB Acquisitions, LLC filed for record on March 18, 2015, in Book 525, Page 354, Peach County, Georgia Records; as assigned by that certain Assignment of Security Deed by RREF II PB Acquisitions, LLC to RREF II PB-GA, LLC, filed for record on August 25, 2015, in Book 533, Page 265, Peach County, Georgia Records (collectively, the Security Deed), said Security Deed having been given to secure a Promissory Note and Security Agreement, in the original principal sum of One Hundred Forty-Two Thousand Three Hundred Eight and 18/100 Dollars ($142,308.18), with interest at the rate stated in said Note on the unpaid balance until paid, there will be sold by the undersigned at public outcry to the highest bidder for cash before the Courthouse door at Peach County, Georgia, between the hours of 10:00 a.m. and 4:00 p.m. on November 3, 2015, the following described property:

> All that tract or parcel of land situate, lying and being in the State of Georgia, County of Peach, and in the City of Fort Valley therein, fronting East on South Camellia Boulevard, formerly Macon Street, a distance of 25' 8" (twenty-five feet, eight inches), and running back with uniform width a distance of 92' 10" (ninety-two feet, ten inches), more or less. Said tract is bounded now or formerly on the Norht by lands of J. W. Woolfolk, on the East by South Camellia Boulevard, formerly Macon Street, on the South by lands of Herbert, and on the West by an open court, and said tract is the same property conveyed form Mrs. Ora Haun Watson to Linton Beckham, by deed dated March 11, 1947, of record in the

Office of the Clerk of the Superior Court of Peach County, Georgia, in Deed Book W at page 69.

The debt secured by the herein described Security Deed has been declared due because of, among other possible events of default, failure to pay the indebtedness when due and in the manner provided in the Note and Security Deed. The debt remaining in default, this sale will be made for the purpose of paying the same and all expenses of this sale, including attorneys' fees.

The entity that has full authority to negotiate, amend, and modify all terms of the Security Deed with the debtor is RREF II PB-GA, LLC, Attention: Leslie P. Sharpe, Esq., 790 NW 107 Avenue, Suite 400, Miami, Florida 33172, (305) 485-2077. Please understand that the secured creditor is not required to negotiate, amend, or modify the terms of the Security Deed.

Said property will be sold subject to any outstanding ad valorem taxes (including taxes that are a lien, but not yet due and payable); matters that may be disclosed by an accurate survey and/or inspection of the property; all assessments, liens, encumbrances, zoning ordinances, easements, covenants and restrictions; and any matters of record superior to this Security Deed.

This sale will be conducted subject to (1) confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and (2) final confirmation and audit of the status of the loan with the holder of the Security Deed.

RREF II PB-GA, LLC as
Attorney-in-Fact for Wright N. Duncan, Jr.

Jones Walker LLP
11 North Water Street
Suite 1200
Mobile, Alabama 36602
(251) 432-1414

THIS LAW FIRM MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

STATE OF GEORGIA

PEACH COUNTY

### NOTICE OF SALE UNDER POWER

By virtue of the power of sale contained in that certain Security Deed given by Wright N.

Duncan, Jr. to The Bank of Perry dated May 6, 2010, filed for record on May 7, 2010 in Book

440, Page 634, Peach County, Georgia Records; as assigned by that certain Transfer and

Assignment of Security Deed by The Bank of Perry to RREF II PB Acquisitions, LLC filed for

record on March 18, 2015, in Book 525, Page 357, Peach County, Georgia Records; as assigned

by that certain Assignment of Security Deed by RREF II PB Acquisitions, LLC to RREF II PB-

GA, LLC, filed for record on August 25, 2015, in Book 534, Page 69, Peach County, Georgia

Records (collectively, the Security Deed), said Security Deed having been given to secure a

Promissory Note and Security Agreement, in the original principal sum of One Hundred Forty-

Two Thousand Three Hundred Eight and 18/100 Dollars ($142,308.18), with interest at the rate

stated in said Note on the unpaid balance until paid, there will be sold by the undersigned at

public outcry to the highest bidder for cash before the Courthouse door at Peach County,

Georgia, between the hours of 10:00 a.m. and 4:00 p.m. on November 3, 2015, the following

described property:

> All that tract or parcel of land situate, lying and being in the State of Georgia, County of Peach, and in Land Lot 233 of the Ninth Land District therein, being known and identified as Lots 9 and 10 in Block C of Allen Subdivision and being more particularly described as follows:
>
> BEGIN at the point of intersection between the westerly boundary of Willow Lake Road (formerly Slappey Mill Road) and the northeasterly boundary of Duncan Street in said Allen Subdivision; run thence in a northerly direction along the easterly boundary of Willow Lake Road 170 feet; run thence in a northwesterly direction parallel to Duncan Street 95 feet; run thence in a southwesterly direction on a line perpendicular to Duncan Street

150 feet to northeasterly boundary of Duncan Street; run thence in a southeasterly direction along northeasterly boundary of Duncan Street 170 feet to the point or place of beginning.

A drawing of Allen Subdivision recorded in Plat Record 3, p. 175, Clerk's Office, Superior Court, Peach County, Georgia is hereby referred to for a more complete description.

The debt secured by the herein described Security Deed has been declared due because of, among other possible events of default, failure to pay the indebtedness when due and in the manner provided in the Note and Security Deed.  The debt remaining in default, this sale will be made for the purpose of paying the same and all expenses of this sale, including attorneys' fees.

The entity that has full authority to negotiate, amend, and modify all terms of the Security Deed with the debtor is RREF II PB-GA, LLC, Attention: Leslie P. Sharpe, Esq., 790 NW 107 Avenue, Suite 400, Miami, Florida 33172, (305) 485-2077.  Please understand that the secured creditor is not required to negotiate, amend, or modify the terms of the Security Deed.

Said property will be sold subject to any outstanding ad valorem taxes (including taxes that are a lien, but not yet due and payable); matters that may be disclosed by an accurate survey and/or inspection of the property; all assessments, liens, encumbrances, zoning ordinances, easements, covenants and restrictions; and any matters of record superior to this Security Deed.

This sale will be conducted subject to (1) confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and (2) final confirmation and audit of the status of the loan with the holder of the Security Deed.

RREF II PB-GA, LLC as
Attorney-in-Fact for Wright N. Duncan, Jr.

Jones Walker LLP
11 North Water Street
Suite 1200
Mobile, Alabama 36602
(251) 432-1414

{M1034559.1}

THIS LAW FIRM MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.